IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

YETUNDE AKINYEMI,

        Plaintiff,

v.

PEPSICO, INC.
555 WEST MONROE STREET
CHICAGO, IL 60661,

        Defendant.

No. 12 cv 5876

Judge:  Charles P. Kocoras
Magistrate:  Judge Sheila M. Finnegan

## ANSWER TO FIRST AMENDED COMPLAINT
## FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF

Defendant, Quaker Sales & Distribution, Inc. ("Quaker"), incorrectly named as PepsiCo,

Inc., by its attorneys, for its Answer to Plaintiff's First Amended Complaint, states as follows:

**Nature of the Case**

**ALLEGATION NO. 1:**

This action is brought to remedy unlawful discrimination practices on the basis of race,
harassment and hostile work environment in violation of Title VII of the 1964 Civil Rights Act,
as amended, and race, retaliation, harassment and hostile work environment under Section 1981
of the Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981").

**ANSWER:**

Quaker admits that Plaintiff asserts claims under Title VII and Section 1981.  Quaker

denies the remaining allegations.

**Jurisdiction and Venue**

**ALLEGATION NO. 2:**

The Court has jurisdiction pursuant to 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §§1331 and 1343.

**ANSWER:**

Quaker admits.

**ALLEGATION NO. 3:**

Mandatory injunctive relief, declaratory relief, compensatory and punitive damages, attorneys' fees and other appropriate legal and equitable relief are sought pursuant to 42 U.S.C. §2000e-5(g) and (k), 42 U.S.C. §1981A, 42 U.S.C. §1988 and 28 U.S.C. §2201.

**ANSWER:**

Quaker admits that Plaintiff seeks the stated relief but denies she is entitled to any of it.

**ALLEGATION NO. 4:**

As many of the unlawful practices complained of herein occurred within this judicial district, venue is proper in this District pursuant to 42 U.S.C. §2000e-5(f)(3) and 29 U.S.C. §1391(b).

**ANSWER:**

Quaker admits that venue is proper in this District, but denies the remaining allegations.

**Determination by the U.S. Equal Employment Opportunity Commission**

**ALLEGATION NO. 5:**

Akinyemi filed charges of discrimination with the United States Equal Employment Opportunity Commission (EEOC). On April 28, 2012, Akinyemi received Dismissal and Notice of Rights from EEOC, copies of which are attached hereto as Exhibits A and B, informing her of the determination of EEOC. "The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge." Akinyemi timely filed this lawsuit within 90 days of receipt of the EEOC notices.

CHICAGO/#2360516.3

**ANSWER:**

Quaker admits that Plaintiff filed Charge Nos. 440-2010-00640 and 440-2009-06333 with the United States Equal Employment Opportunity Commission. Quaker further admits that the EEOC issued a Dismissal and Notice of Rights for each charge on April 24, 2012, and a portion of the notices is quoted in the allegation. Quaker is without knowledge or information sufficient to form a belief as to when Plaintiff received the Dismissal Notices from EEOC, and therefore is without knowledge or information sufficient to form a belief as to whether Plaintiff filed her Complaint within 90 days of receipt of the Dismissal Notices. Quaker denies the remaining allegations.

**Parties**

**ALLEGATION NO. 6:**

Yetunde Akinyemi, a thirty-two year old black African female of Nigerian descent, was and still is at all times hereinafter mentioned a resident of the State of Illinois, County of Cook.

**ANSWER:**

On information and belief, Quaker admits.

**ALLEGATION NO. 7:**

At all times herein mentioned, PepsiCo was and still is a corporation organized and existing under the laws of the State of North Carolina with an office located at 555 West Monroe Street, Chicago, Illinois 60661.

**ANSWER:**

Quaker admits, but states that while PepsiCo, Inc. is incorporated under the laws of the State of North Carolina, Quaker is not.

**ALLEGATION NO. 8:**

At all relevant times, Akinyemi had been an employee of PepsiCo.

CHICAGO/#2360516.3

**ANSWER:**

Quaker denies. Plaintiff was employed by Quaker Sales & Distribution, Inc.

**ALLEGATION NO. 9:**

PepsiCo is an employer within the meaning of Title VII, 42 U.S.C. §2000e(b).

**ANSWER:**

Quaker admits.

**ALLEGATION NO. 10:**

Supervisors of Akinyemi referred to in this complaint were employees of PepsiCo and at all relevant times acted on behalf of their employer. None of these supervisors are black Africans.

**ANSWER:**

The Complaint alleges that Marina Nechiporenko and Imelda Munoz were Plaintiff's supervisors. Quaker admits that Nechiporenko and Munoz are not black Africans. Quaker denies the remaining allegations.

**Factual Allegations Common to All Causes of Action**

**ALLEGATION NO. 11:**

PepsiCo hired Akinyemi, a thirty-two year old African American of Nigerian descent, as a full-time Accountant on September 28, 2005. She worked in the Corporate Finance Department in Chicago through January 2007. On or about January 28, 2007, Akinyemi received a promotion to Financial Analyst II in Quaker's Food and Snacks Division ("QFS") in the QFS Supply Chain Finance organization where she worked until her wrongful termination on October 6, 2009.

**ANSWER:**

On information and belief, Quaker admits that Plaintiff is a 32 year old African-American of Nigerian descent. Quaker admits that it hired Plaintiff as a full-time Accountant on September 28, 2005. Quaker further admits that Plaintiff worked in its finance department in Chicago into 2007, and was promoted to Financial Analyst II on about January 28, 2007.

4

Quaker admits that the Financial Analyst II position was in the supply chain organization of the Quaker Food and Snack division and Plaintiff remained there until her termination on about October 5, 2009. Quaker denies the remaining allegations.

## ALLEGATION NO. 12:

In QFS Akinyemi was supervised by Marina Nechiporenko, a white Caucasian female of Russian descent. From the time of her hiring and up until the departure of Nechiporenko from QFS, Akinyemi received positive and constructive performance reviews from her supervisors.

## ANSWER:

Quaker admits that during a portion of the time Plaintiff was in the Financial Analyst II position in QFS, her supervisor was Marina Nechiporenko, a Caucasian female. On information and belief, Quaker admits that Nechiporenko is of Russian descent. Quaker admits that Plaintiff received constructive performance reviews during the referenced time period, but denies the reviews were entirely positive. Quaker denies the remaining allegations.

## ALLEGATION NO. 13:

In the beginning of 2009, a reorganization of QFS was announced that included the promotion of Linda Bonata to Sr. Manager over Marina Nechiporenko. Because of ethnic-based animosity with Bonata during the time they were at the same organizational level, Nechiporenko sought to move to some other unit in PepsiCo and in or about March 2009 obtained a position in the New York office. She supported Akinyemi in seeking a position in another part of the company as well.

## ANSWER:

Quaker admits that QFS was reorganized in late 2008 and early 2009 and Linda Bonata was promoted to Senior Manager. Quaker further admits that Nechiporenko sought a position in New York and began working there in about April 2009. Quaker is without knowledge or information sufficient to form as belief as to whether Nechiporenko supported Plaintiff in seeking a position in another part of the company and therefore denies that allegation. Quaker denies the remaining allegations.

CHICAGO/#2360516.3

**ALLEGATION NO. 14:**

In or about March 2009, Imelda Munoz, who would replace Nechiporenko as Akinyemi's supervisor, harassed Akinyemi at a company party by making derogatory statements against her and her relationship with her supervisor and accused her of "kissing her boss's ass."

**ANSWER:**

Quaker admits that Imelda Munoz became Plaintiff's supervisor. Quaker denies the remaining allegations.

**ALLEGATION NO. 15:**

At the end of April 2009, Marina Nechiporenko moved to New York and Imelda Munoz, a female Hispanic, replaced her as Akinyemi's supervisor. This was Munoz's first time as a supervisor in the QFS Supply Chain unit. Munoz discriminated, harassed and retaliated against Akinyemi, making it difficult for her to perform her job. Munoz balked at seeing that Akinyemi had essential tools and resources to perform her job.

**ANSWER:**

Quaker admits that in April 2009, Marina Nechiporenko moved to New York and Imelda Munoz, a female Hispanic, became Plaintiff's supervisor. Quaker admits that this was the first supervisory position that Munoz held in QFS supply chain. Quaker denies the remaining allegations.

**ALLEGATION NO. 16:**

Within a month of assuming her role as Akinyemi's supervisor, Ms. Munoz turned down Akinyemi's request for promotion to a higher grade level, which had been previously approved by Nechiporenko. This seems to be a pattern at PepsiCo where several other Blacks have not been promoted but non-Blacks with lesser experience have been promoted. Similarly situated non-Blacks have been promoted and even those with less qualifications or experience have been promoted.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 17:**

PepsiCo prevented Akinyemi from seeking any promotional opportunities. PepsiCo has consistently prevented Black employees from obtaining promotions. A number of Black

6

employees are still at PepsiCo even though they were not promoted. A number of other Black employees left PepsiCo because they were not promoted. PepsiCo has consistently promoted non-Blacks while denying Blacks any opportunities.

**ANSWER:**

Quaker admits that Quaker and PepsiCo employ African-American employees. Quaker

denies the remaining allegations.

**ALLEGATION NO. 18:**

Ms. Munoz changed Akinyemi's job responsibilities to stop working on projects and only to work on tedious non-value added tasks. For example, Foods CoPack, which was done by the Foods team, was added on to Akinyemi's job responsibilities. Volume-Mix was also added, as was the Lynch deck, the entire cell deck, and various other tedious responsibilities. Ms. Munoz refused Akinyemi's request to use a consultant in the department to assist on non-value added tasks, even though the consultant was not fully utilized. Other non-blacks in the Department with lesser workloads and more responsibilities were able to use the consultant to assist on their projects.

**ANSWER:**

Quaker admits that Plaintiff's job duties included some of the items listed in

Paragraph 18. Quaker denies the remaining allegations.

**ALLEGATION NO. 19:**

Ms. Munoz continuously harassed Akinyemi by scheduling 1:1 meetings in conference rooms, using these occasions to scream at her, including one occasion screaming at her in front of Linda Bonata, Munoz's manager, when Akinyemi raised a question about a job issue with Bonata. Ms. Munoz barked orders, acting as if she was leading a prison camp.

**ANSWER:**

Quaker admits that Imelda Munoz scheduled 1:1 meetings with Plaintiff. Quaker denies

the remaining allegations.

**ALLEGATION NO. 20:**

PepsiCo has a harassment and retaliation policy under which complaints or concerns about harassment may be made to any salaried member of management. Responsibility for the policy is assigned to the Vice President - Human Resources.

**ANSWER:**

Quaker admits.

**ALLEGATION NO. 21:**

In or about June and July 2009, Akinyemi complained to her HR Contact, Valerie L. Henderson, a Black female, about the harassment by her supervisor and having her request for promotion, previously approved by her former supervisor, now turned down by her new supervisor. Henderson told Akinyemi she had to do whatever Munoz wanted her to do because Munoz was her supervisor and more powerful. Cindy Thul, a white female and Bonata's boss, told Akinyemi that her requests for promotion were refused because Ms. Munoz was new to her supervisory job. The director needed her to stay in her current role until the end of June because she did not want a hole in Snacks Supply Chain Finance. Akinyemi needed to stay in her role so there was no disruption in the tasks performed by her unit until Ms. Munoz could become familiar with them.

**ANSWER:**

Quaker admits that Valerie Henderson is a black female and Cindy Thul is a white female

and was Linda Bonata's supervisor in June and July 2009. Quaker denies the remaining

allegations.

**ALLEGATION NO. 22:**

In early July 2009, Munoz requested that Akinyemi fill out a feedback survey. In spite of the fact that the survey was anonymous, Akinyemi was the only person Munoz managed, and any unfavorable feedback she may have received could only be attributed to Akinyemi.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 23:**

In mid-July 2009, Munoz did not include information about Akinyemi's performance under Nechiporenko during the first four months of the year in Akinyemi's mid-year review. The review focused on problems that needed to be corrected.

CHICAGO/#2360516.3

**ANSWER:**

Quaker admits that Imelda Munoz completed a mid-year review of Plaintiff in about July 2009, and the review included performance deficiencies that needed to be corrected. Quaker denies the remaining allegations.

**ALLEGATION NO. 24:**

On July 22, 2009, Akinyemi requested a new laptop from Ms. Munoz because the one she had developed problems and the lease had expired. Because of the lease expiration, the Information Technology Department could not perform needed repairs on the laptop, which was no longer working properly. Ms. Munoz failed to sign off on the electronic form that Akinyemi had prepared for her signature for the laptop's replacement.

**ANSWER:**

Quaker admits that Plaintiff requested a laptop from Imelda Munoz. Quaker is without knowledge or information sufficient to form a belief as to the remaining allegations and therefore denies them.

**ALLEGATION NO. 25:**

On July 29, 2009, Munoz initiated a formal Performance Improvement Plan stating that Akinyemi's job performance was not at an acceptable level. The plan was for the period August 3, 2009 through October 5, 2009.

**ANSWER:**

Quaker admits.

**ALLEGATION NO. 26:**

On August 17, 2009, Akinyemi filed a formal discrimination complaint based on race, harassment and retaliation with EEOC. PepsiCo was asked to respond by September, 2009, if it wished to participate in the EEOC Mediation program and asked to provide a statement of its position by September 29, 2009. No statement was provided until August 2011, almost two years later.

**ANSWER:**

Quaker admits that Akinyemi filed Charge No. 440-2009-06333 with the EEOC on August 17, 2009. Quaker states that the charge speaks for itself and Quaker denies the

allegations to the extent they are inconsistent with the charge. Quaker admits that EEOC's Notice of Charge of Discrimination requested a statement of position by September 29, 2009 and invited a mediation form by September 2, 2009. Quaker admits that it submitted a position statement addressing Charge No. 440-2009-06333 and Charge No. 440-2010-00640 in August 2011.

## ALLEGATION NO. 27:

On October 6, 2009, Akinyemi was terminated by PepsiCo.

## ANSWER:

Quaker admits that Plaintiff's employment with Quaker was terminated on about October 5, 2009. Quaker denies that Plaintiff was employed by PepsiCo.

## ALLEGATION NO. 28:

In 2009, there were two full-time Financial Analysts in the QFS Supply Chain Finance Unit. One was Akinyemi and the other was Diana Clopton, also a black female African American. After Akinyemi was terminated, a number of tasks she performed under the supervision of Munoz were assigned to Clopton. For those tasks Munoz exercised supervision over Clopton in spite of the fact that she was not Clopton's immediate supervisor. Clopton complained about her treatment by Munoz to the HR Vice President, a black African American female, who assisted Clopton in a move out of QFS into another department at PepsiCo.

## ANSWER:

Quaker admits the first two sentences. Quaker further admits that following Plaintiff's termination, Diana Clopton may have assisted with some tasks previously performed by Plaintiff. Quaker denies the remaining allegations.

## Count I
## Violation of Title VII - Race Discrimination

## ALLEGATION NO. 29:

Plaintiff repeats, re-alleges and incorporates by reference, all aforementioned paragraphs, specifically the statements in the FACTS section of this complaint, with the same force and effect as if herein set forth. Having said this, the Facts section is to be read as a paragraph in Plaintiff's Count I.

CHICAGO/#2360516.3

**ANSWER:**

Quaker restates and incorporates by reference its Answers to Paragraphs 1 through 28 as if fully set forth herein.

**ALLEGATION NO. 30:**

Plaintiff is a citizen of the United States as defined by Title VII of the Civil Rights Act of 1964.

**ANSWER:**

On information and belief, Quaker admits that Plaintiff is a citizen of the United States. Quaker denies that Title VII defines "citizen" and therefore denies the remaining allegations.

**ALLEGATION NO. 31:**

The discriminatory actions for which Count I relates were carried out by defendant.

**ANSWER:**

Quaker denies that any discriminatory actions occurred and therefore denies the allegations.

**ALLEGATION NO. 32:**

As a result of racially discriminatory treatment directed at Akinyemi by defendant because Akinyemi is Black, Akinyemi is unable to enjoy the full and equal benefits of all laws on the same basis as citizens from other racial backgrounds on the defendant's property during the period of Akinyemi's employment.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 33:**

As a result of the discriminatory treatment by defendant directed at Akinyemi because she is Black, Akinyemi is subject to terms and conditions of employment different from those afforded by defendant to employees of other racial backgrounds.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 34:**

Defendant's actions were undertaken intentionally and purposefully with the purpose of denying Akinyemi equal treatment on the basis of her race/color/national origin.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 35:**

Defendant acted in bad faith and with willful, callous and wanton disregard for Akinyemi's federally protected rights.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 36:**

Akinyemi was harmed and continues to be harmed by defendant's conduct. Such harm includes, defamation, great and irreparable present and future loss and injury including, but not limited to pain and suffering, humiliation, embarrassment and mental stress.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 37:**

The conduct of defendant was the proximate cause and substantial factor in causing Akinyemi's harm.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 38:**

Akinyemi has been denied the enjoyment of all benefits, privileges, terms, and conditions of the employer-employee relationship afforded Hispanic employees and employees with racial backgrounds other than black African by defendant and that Akinyemi was and continues to be denied, by the defendant and its employees, the benefits, privileges, terms, and conditions afforded to Hispanic employees and employees with racial backgrounds other than black African.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 39:**

The defendant's actions were undertaken intentionally and purposefully with the purpose of denying Akinyemi equal treatment on the basis of her race/color.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 40:**

On the basis of Akinyemi's race (black African), she has been denied the equal enjoyment of the benefits and terms and conditions of a contractual relationship on the same basis as white employees, Hispanic employees and employees of racial backgrounds other than black African.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 41:**

The conduct of the defendant is/was the proximate cause and substantial factor in causing Akinyemi's harm.

**ANSWER:**

Quaker denies.

**Count II**
**Violation of Title VII - Hostile Work Environment**

**ALLEGATION NO. 42:**

Akinyemi repeats, re-alleges and incorporates by reference, all aforementioned paragraphs, specifically the statements in the FACTS section of this complaint, with the same force and effect as if herein set forth. Having said this, the Facts section is to be read as a paragraph in Akinyemi's Count II.

**ANSWER:**

Quaker restates and incorporates by reference its Answers to Paragraphs 1 through 41 as

if fully set forth herein.

13

**ALLEGATION NO. 43:**

Akinyemi alleges that she was subjected to harassment by defendant; and, that this harassment was motivated by Akinyemi's race.

**ANSWER:**

Quaker admits that Plaintiff makes these allegations, but denies subjecting Plaintiff to

harassment or harassment based on Plaintiff's race.

**ALLEGATION NO. 44:**

The conduct of the defendant, by its inaction in allowing derogatory racial remarks to be directed at Akinyemi, was and is motivated by the fact that she is African American of Nigerian descent.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 45:**

The conduct was so severe and pervasive that a reasonable person in Akinyemi's position would find Akinyemi's work environment to be hostile or abusive.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 46:**

Akinyemi believed her work environment to be hostile or abusive as a result of the derogatory remarks about her race.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 47:**

Akinyemi was harmed (and continues to be harmed) by the defendant's conduct. Such harm includes, defamation, great and irreparable present and future loss and injury including, but not limited to pain and suffering, humiliation, embarrassment and mental stress.

**ANSWER:**

Quaker denies.

14

**ALLEGATION NO. 48:**

The conduct of the defendant is/was the proximate cause and substantial factor in causing Akinyemi's harm.

**ANSWER:**

Quaker denies.

**Count III**
**Race Discrimination under Section 1981**

**ALLEGATION NO. 49:**

Akinyemi repeats, re-alleges and incorporates by reference, all aforementioned paragraphs, specifically the statements in the FACTS section of this complaint, with the same force and effect as if herein set forth. Having said this, the Facts section is to be read as a paragraph in Akinyemi's Count III.

**ANSWER:**

Quaker restates and incorporates by reference its Answers to Paragraphs 1 through 48 as

if fully set forth herein.

**ALLEGATION NO. 50:**

Akinyemi is a citizen of the United States as defined by Section 1981.

**ANSWER:**

On information and belief, Quaker admits that Plaintiff is a citizen of the United States.

Quaker denies that Section 1981 defines "citizen" and therefore denies the remaining allegations.

**ALLEGATION NO. 51:**

The discriminatory actions for which Count III concern were carried out by defendant and its employees.

**ANSWER:**

Quaker denies that any discriminatory actions occurred and therefore denies the

allegations.

CHICAGO/#2360516.3

**ALLEGATION NO. 52:**

As a result of preferential discriminatory treatment directed at Akinyemi because she is black of African descent by defendant and its employees, she is unable to enjoy the full and equal benefits of all laws on the same basis as white citizens on defendant's property when she is on duty.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 53:**

As a result of racial discriminatory treatment by defendant, directed at Akinyemi because she is black of African descent, she is subject to terms and conditions of employment that are different from those afforded by defendant to white employees.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 54:**

Akinyemi has been denied the enjoyment of all benefits, privileges, terms, and conditions of the employer-employee relationship afforded to white employees of defendant and that Akinyemi was and continues to be denied, by the defendant and its employees, the benefits, privileges, terms, and conditions set forth in the employee handbook; and, that these benefits, privileges, terms, and conditions are afforded to white employees.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 55:**

The defendant's actions were undertaken intentionally and purposefully with the purpose of denying Akinyemi equal treatment on the basis of race.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 56:**

The defendant acted in bad faith and with willful, callous and wanton disregard for Akinyemi's federally protected rights.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 57:**

On the basis of Akinyemi's race (black African), she has been denied the equal enjoyment of the benefits and terms and conditions of a contractual relationship on the same basis as white persons.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 58:**

Akinyemi was harmed (and continues to be harmed) by the defendant's conduct. Such harm includes, defamation, great and irreparable present and future loss and injury including, but not limited to pain and suffering, humiliation, embarrassment and mental stress.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 59:**

The conduct of the defendant is/was the proximate cause and substantial factor in causing Akinyemi's harm.

**ANSWER:**

Quaker denies.

**Count IV**
**Retaliation under Section 1981**

**ALLEGATION NO. 60:**

Akinyemi repeats, re-alleges and incorporates by reference, all aforementioned paragraphs, specifically the statements in the FACTS section of this complaint, with the same force and effect as if herein set forth. Having said this, the Facts section is to be read as a paragraph in Akinyemi's Count IV.

**ANSWER:**

Quaker restates and incorporates by reference its Answers to Paragraphs 1 through 59 as

if fully set forth herein.

CHICAGO/#2360516.3

**ALLEGATION NO. 61:**

Akinyemi is a citizen of the United States as defined by Section 1981.

**ANSWER:**

On information and belief, Quaker admits that Plaintiff is a citizen of the United States.

Quaker denies that Section 1981 defines "citizen" and therefore denies the remaining allegations.

**ALLEGATION NO. 62:**

The discriminatory actions for which Count IV concern were carried out by defendant and its employees.

**ANSWER:**

Quaker denies that any discriminatory actions occurred and therefore denies the allegations.

**ALLEGATION NO. 63:**

By the acts and practices described above, defendant retaliated against Akinyemi because she opposed unlawful discrimination. Defendant also retaliated against Akinyemi by terminating her after she had filed her discrimination charge with the EEOC.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 64:**

Akinyemi is now suffering and will continue to suffer irreparable injury and monetary damages for mental anguish and humiliation as a result of defendant's retaliatory acts.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 65:**

Defendant acted intentionally and with malice and/or reckless indifference to Akinyemi's federally protected rights.

**ANSWER:**

Quaker denies.

**Count V**
**Violation of Section 1981 - Harassment and Hostile Work Environment**

**ALLEGATION NO. 66:**

Akinyemi repeats, re-alleges and incorporates by reference, all aforementioned paragraphs, specifically the statements in the FACTS section of this complaint, with the same force and effect as if herein set forth. Having said this, the Facts section is to be read as a paragraph in Akinyemi's Count V.

**ANSWER:**

Quaker restates and incorporates by reference its Answers to Paragraphs 1 through 65 as

if fully set forth herein.

**ALLEGATION NO. 67:**

Akinyemi is a citizen of the United States as defined by Section 1981.

**ANSWER:**

On information and belief, Quaker admits that Plaintiff is a citizen of the United States.

Quaker denies that Section 1981 defines "citizen" and therefore denies the remaining allegations.

**ALLEGATION NO. 68:**

The discriminatory actions for which Count V concern were carried out by defendant and its employees.

**ANSWER:**

Quaker denies that any discriminatory actions occurred and therefore denies the

allegations.

**ALLEGATION NO. 69:**

By the acts and practices described above, defendant created a harassing and hostile work environment in violation of Section 1981 of Civil Rights Act of 1866 and this harassing and hostile environment continued at various times during Akinyemi's employment.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 70:**

The defendant's actions were undertaken intentionally and purposefully with the purpose of denying Akinyemi equal treatment on the basis of her race.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 71:**

Defendant acted in bad faith and with willful, callous and wanton disregard for Akinyemi's federally protected rights.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 72:**

On the basis of Akinyemi's race, she has been denied equal treatment on the same basis enjoyed by white employees, Hispanic employees and employees of racial backgrounds other than black African in the employment environment.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 73:**

Akinyemi was harmed (and continues to be harmed) by defendant's conduct. Such harm includes, defamation, great and irreparable present and future loss and injury including, but not limited to pain and suffering, humiliation, embarrassment, mental distress, and stress.

**ANSWER:**

Quaker denies.

**ALLEGATION NO. 74:**

The conduct of defendant is/was the proximate cause and substantial factor in causing Akinyemi's harm, and continuing harm because no one has employed her since defendant terminated her employment although she has been looking for employment.

**ANSWER:**

Quaker denies.

## ADDITIONAL DEFENSES

1.      Plaintiff's claims for monetary relief are barred to the extent she has failed to mitigate her damages.

2.      Plaintiff may not recover under Title VII for any act occurring more than 300 days prior to the date she filed her EEOC charges.

3.      Plaintiff's Title VII claims are barred to the extent they are not like or reasonably related to her EEOC charges.

4.      All acts Quaker took against Plaintiff were taken in good faith and were unrelated to Plaintiff's race and alleged complaints of discrimination or harassment.

5.      Plaintiff is not entitled to punitive damages because no supervisor or manager acted with malice or reckless disregard to Plaintiff's rights.

6.      Plaintiff is not entitled to punitive damages because Quaker acted at all times with good faith efforts to comply with all laws prohibiting discrimination, harassment and retaliation.

7.      Plaintiff's racial harassment claims are barred because Plaintiff unreasonably failed to take advantage of preventative and corrective opportunities provided by Quaker.

8.      Plaintiff may not recover any monetary relief for the period after November 5, 2009, the date Quaker discovered Plaintiff charged personal items to her corporate credit card, an offense for which Plaintiff would have been terminated.

CHICAGO/#2360516.3

Respectfully submitted,

QUAKER SALES & DISTRIBUTION, INC.


By:   s/ Thomas M. Wilde
        One of Their Attorneys

Thomas M. Wilde, Bar No. 6217048
Emily C. Fess, Bar No. 6299322
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, Illinois  60601-1003
T:  +1 (312) 609-7500

Dated:  September 19, 2012

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I electronically filed the foregoing DEFENDANT'S

ANSWER TO FIRST AMENDED COMPLAINT FOR INJUNCTIVE, DECLARATORY AND

MONETARY RELIEF with the Clerk of the Court using the CM/ECF system which will send

notifications of such filing to the following

> Raymond Barbosa
> Barbosa Law Group, P.C.
> 100 West Monroe Street
> Suite 711
> Chicago, Illinois 60603

on September 19, 2012.

/s Thomas M. Wilde