IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YETUNDE AKINYEMI,<br><br>        Plaintiff,<br><br>v.<br><br>PEPSICO, INC.,<br><br>        Defendant. | No. 12 CV 5876<br><br>Judge:  Charles P. Kocoras<br>Magistrate:  Judge Sheila M. Finnegan |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Quaker Sales & Distribution, Inc. ("Quaker" or "the Company"), incorrectly named as PepsiCo, Inc., by its attorneys, submits this Memorandum of Law in Support of its Motion for Summary Judgment.

**I.    PRELIMINARY STATEMENT**

Plaintiff, a former Quaker employee, alleges that she: (i) was terminated; (ii) was denied a promotion, a laptop computer and the use of a temporary worker; (iii) had her job duties changed; and (iv) was subjected to a hostile work environment because of her race (African-American).[1] She also alleges that her termination was in retaliation for her filing an EEOC Charge. She brings her claims under Title VII and Section 1981. All of Plaintiff's claims are ripe for summary judgment.

---

[1] Plaintiff titled the discrimination claims in her First Amended Complaint as race discrimination claims (Am. Compl. Counts I and III), but her First Amended Complaint includes occasional references to Plaintiff's Nigerian descent and color (Am. Compl. ¶¶ 6, 11, 34, 39, 44). It is unclear if Plaintiff intends to assert claims of national origin or color discrimination, neither of which was contained in her underlying EEOC Charges (Pl. Dep. Exs. 35 and 36). To the extent Plaintiff asserts any of her claims as national origin or color discrimination claims, they fail for the same reasons as her race discrimination claims.

1

Plaintiff has no direct proof of discrimination or retaliation, and she cannot establish a *prima facie* case under the indirect method of proof. Plaintiff was terminated for unsatisfactory job performance at the conclusion of a two-month-long performance improvement plan ("PIP"). She cannot show that she was meeting Quaker's performance expectations or that any similarly situated non-African-Americans were treated better. Nor can she show that Quaker's stated reason for her termination – unsatisfactory performance – was a pretext for intentional discrimination. Her termination claim, thus, fails.

Plaintiff's promotion claim fails because she has not identified any available position that she sought and was denied, let alone what the qualifications were, that she possessed them, who was selected for the job, or that she was equally or better qualified. There is simply no record evidence whatsoever to even lay the foundation for a failure-to-promote claim.

Plaintiff's other disparate treatment claims (denial of a laptop, use of a temporary worker and changed job duties) fail because these events, even if true, are not materially adverse employment actions. Moreover, there is no record evidence that non-African-Americans were treated better with respect to laptops, use of temporary workers or changed job duties. Nor is there any evidence that Quaker's stated reasons for its handling of the laptop request, the use of the temporary worker and changing job duties were pretextual, let alone racial.

Plaintiff's hostile work environment claim fails because there was no racial component to any of the treatment she complains of and, in any event, it does not rise to the level of a hostile work environment as a matter of law.

Finally, Plaintiff's claim that she was terminated in retaliation for filing an EEOC Charge fails because the decision-makers for her termination had no knowledge of the Charge when they

made the termination decision. Moreover, Plaintiff has no evidence to cast any doubt upon Quaker's stated reason for her termination – unsatisfactory performance.

For all of these reasons, explained more fully below, summary judgment should be granted to Quaker on all of Plaintiff's claims and the case dismissed with prejudice.

**II.     ARGUMENT**

    **A.     Legal Standards**

"Summary judgment is the 'put up or shut up moment in a lawsuit.'" *Otero v. City of Chi.,* No. 10 CV 2284, 2013 WL 530977, at \*4 (N.D. Ill. Feb. 6, 2013), *citing Siegel v. Shell Oil Co.,* 612 F.3d 932, 937 (7th Cir. 2010). Summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Harper v. C.R. England,* 687 F.3d 297, 306 (7th Cir. 2012). While all inferences must be drawn in favor of the non-moving party, "our favor toward the nonmoving party does not extend to drawing 'inferences that are supported by only speculation or conjecture.'" *Id.* (internal cites omitted). "Rather, '[a] genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party.'" *Id.* (internal cites omitted). Here, based upon the undisputed record evidence, no reasonable jury could find in Plaintiff's favor on any of her claims. Thus, Quaker is entitled to judgment as a matter of law.

A plaintiff may prove discrimination or retaliation by using either the direct or indirect method of proof. *Morgan v. SVT, LLC*, ___ F.3d. ___, No. 10 C 0474 (7th Cir. Aug. 1, 2013).[2] In *Morgan*, the Seventh Circuit clarified the standards for the direct and indirect methods. Direct proof includes both evidence explicitly linking an adverse employment action to an employer's discriminatory animus and circumstantial evidence that would permit the trier of fact to infer that

---

[2] Plaintiff brings her discrimination, hostile work environment and retaliation claims under Title VII and Section 1981. Courts analyze both statutes in the same manner. *Hobbs v. City of Chi.*, 573 F.3d 454, 460 n.1 (7th Cir. 2009).

3

discrimination motivated the adverse action. *Id*. The circumstantial evidence must be strong enough, taken as a whole, to allow the trier of fact to draw the necessary inference. *Id.* The circumstantial evidence may consist of ambiguous statements or behavior towards employees of the protected group; evidence that employees outside the protected group systematically receive better treatment; and evidence that the employer offered a pretextual reason for the adverse employment action. *Id.*

Here, there is no evidence explicitly linking the employment actions Plaintiff complains about to her race. Plaintiff admits, for example, that she never heard anybody at Quaker make any racial remarks (Facts ¶ 65).[3] Nor are there any ambiguous statements or behaviors toward African-Americans, systematically better treatment of African-Americans, evidence that Quaker's stated reasons for its treatment of Plaintiff were pretextual, or other circumstantial evidence that would allow a jury to infer that race discrimination motivated Quaker's actions. Without any direct proof, Plaintiff must resort to the indirect, *McDonnell-Douglas* burden-shifting framework.

She must first establish a *prima facie* case, the elements of which vary for her termination, disparate treatment and retaliation claims. If Plaintiff satisfies her *prima facie* burden, Quaker must articulate a legitimate non-discriminatory reason for its actions. The burden then shifts back to Plaintiff to prove that Quaker's stated reasons were merely a pretext for intentional discrimination. *Northington v. H&M Int'l,* 712 F.3d 1062, 1065 (7th Cir. 2013). As shown below, Plaintiff cannot establish a *prima facie* case or raise an inference of pretext on any of her discrimination or retaliation claims.

---

[3] References to "Facts ¶ __" are to paragraphs from Defendant's contemporaneously filed Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment.

4

### B. Plaintiff's Termination Claim Fails

#### 1. No *Prima Facie* Case

To establish a *prima facie* case on her termination claim, Plaintiff must show that: 1) she is a member of a protected class; 2) she was meeting Quaker's legitimate performance expectations; 3) she suffered an adverse employment action; and 4) Quaker treated other similarly-situated employees who were not members of the protected class more favorably. *Northington,* 712 F.3d at 1065; *Coleman v. Donahoe,* 667 F.3d 835, 845 (7th Cir. 2012). Here, Plaintiff cannot satisfy the second or fourth elements.

#### a. Plaintiff Was Not Performing to Quaker's Expectations

The record is replete with undisputed facts showing that Plaintiff was not performing her Financial Analyst II job to Quaker's expectations. This included loading into spreadsheets financial data with incorrect positive and negative signs, a fundamental problem that caused reports to overstate or understate results (Facts ¶¶ 27-28, 53); failing to attend group meetings that her supervisor (Finance Manager Imelda Munoz) expected her to attend (Facts ¶¶ 29-32); failing to timely respond to requests, complete work on time or provide requested assistance (Facts ¶¶ 33-34, 38, 45, 49); and otherwise making analytical or other errors (Facts ¶ 35).

Munoz's dissatisfaction is plain in her June 11, 2009 e-mail to Plaintiff in which she stated: "I cannot rely on this file in its current state to load Snacks copack actuals for P1-P3 because the figures are incorrect…This will yet again put us behind in reaching our business deadlines for Snacks." (Facts ¶ 35).

Notably, Munoz was not alone in noting that Plaintiff needed to improve the accuracy of her work and her analytical skills. Plaintiff's two prior supervisors, both of whom Plaintiff considered to be good managers and whom she respected and felt were fair, expressed similar sentiments on Plaintiff's 2008 performance review, given in March 2009, noting that Plaintiff

5

"needs to work on reviewing and analyzing her work prior to submission to ensure accuracy and completeness"; "should continue to work on her analytical skills"; and her "critical analysis remains an opportunity" for improvement (Facts ¶¶ 25, 26).

On August 3, 2009, Munoz placed Plaintiff on a Performance Improvement Plan ("PIP") (Facts ¶ 41). Despite being warned that her job was in jeopardy, Plaintiff continued to make the same errors and show the same lax attitude as before. For example, on August 17, 2009, just two weeks after her placement on the PIP, Plaintiff sent Munoz an ending inventory over two hours late (Facts ¶ 45). On September 2, 2009, Plaintiff missed another deadline (Facts ¶ 49). When Munoz asked for an explanation, Plaintiff told her to stop sending time sensitive requests by email because, "[f]or me, checking emails all the time is distracting" (Facts ¶ 50). On September 8, 2009, Plaintiff failed to attend a scheduled 9:00 a.m. meeting with Munoz (Facts ¶¶ 51-52). When Munoz asked for an explanation the next day, Plaintiff told her it would be "safer to schedule meetings at 9:30 a.m. because it takes at least 5 mins [sic] for my computer to boot up, sometimes the elevator is very slow, and sometimes the train is extremely slow" (Facts ¶ 52). Finally, on September 15, 2009, Plaintiff again mixed up the positive and negative signs on data, which resulted in the report showing an overage of $290,000 instead of a shortage (Facts ¶ 53).

Plaintiff's flippant attitude is plain from her emails to Munoz (her boss, after all) telling her to stop sending her time sensitive emails and not to schedule meetings before 9:30 a.m. The record also shows that Plaintiff made little or no effort to improve her performance. Despite Munoz twice telling Plaintiff to take courses in Quaker's on-line Finance University (once in Plaintiff's July 15, 2009 mid-year review and again three weeks into the PIP period on August 27, 2009), Plaintiff never took either course (Facts ¶¶ 46-48). No surprise, then, that Munoz recommended Plaintiff's termination at the conclusion of the PIP.

CHICAGO/#2480539.4

On October 5, 2009, the final day of the PIP period, Quaker terminated Plaintiff for unsatisfactory performance (Facts ¶ 54). Given this undisputed record evidence, Plaintiff cannot possibly show that she was meeting Quaker's performance expectations. She therefore cannot meet the second prong of her *prima facie* case and her termination claim fails.

### b. No Similarly Situated Comparator

Plaintiff's *prima facie* case also fails because there is no evidence of a similarly situated, non-African-American employee who was treated better. Indeed, Plaintiff can point to no other employee who displayed similar performance deficiencies, let alone one who was treated better. For this additional reason, Plaintiff's termination claim fails.

### 2. Plaintiff Cannot Raise a Triable Issue of Pretext

Even if Plaintiff could establish a *prima facie* case on her termination claim, Quaker has articulated a non-discriminatory reason for her termination – unsatisfactory performance. Plaintiff cannot show that reason to be a pretext for intentional race discrimination. "Pretext is a lie, specifically a phony reason for some action." *Fischer v. Avanade, Inc.,* 519 F.3d 393, 403 (7th Cir. 2008). Thus, Plaintiff must show that Quaker's nondiscriminatory reasons for its actions are purposefully false – not merely erroneous.

Plaintiff has no evidence that Quaker did not honestly believe her performance was unsatisfactory. When asked in her deposition why she believes her termination was racially motivated, Plaintiff responded that Munoz "barked out orders" at her and "tried to put down my work and make it seem irrelevant" (Pl. Dep. 163:18-164:2). Even assuming Munoz "barked out orders" and "put down" Plaintiff's work, no record evidence suggests it was for any reason other than Plaintiff's unsatisfactory performance. Given Plaintiff's careless errors and lax attitude, which often surfaced during the "crunch time" of accounting period close, it certainly is not surprising that Munoz did not laud Plaintiff's performance. Moreover, as noted already,

7

Plaintiff's two prior supervisors, expressed similar criticisms in Plaintiff's 2008 review. In short, even assuming for purposes of summary judgment that Munoz "barked out orders" or "put down" Plaintiff's work, those circumstances do not in any way undercut Quaker's stated reason for terminating Plaintiff's employment.

In her deposition Plaintiff otherwise speculated that Munoz "probably did not like Africans" and "[s]ince it was her first time working with a Nigerian, maybe she felt uncomfortable about it" (Pl. Dep. 164:19-165:3). However, Plaintiff's speculation about how Munoz "probably" or "maybe" felt is insufficient to raise an inference of pretext or defeat summary judgment. *Bowden v. Kirkland & Ellis LLP,* 432 F. App'x 596, 600 (7th Cir. 2011) ("conjecture alone is insufficient to defeat a motion for summary judgment"); *Singh v. Town of Mount Pleasant,* 172 F. App'x 675, 682 (7th Cir. 2006) (same).

Because she cannot raise any inference of pretext, Plaintiff's termination claim fails.

C. **Plaintiff's Promotion Claim Fails**

To prevail on her promotion claim, Plaintiff must show that: 1) she belongs to a protected class; 2) she applied for and was qualified for the position sought; 3) she was rejected for that position; and 4) Quaker granted the promotion to someone outside Plaintiff's protected class who was not better qualified. *Grayson v. City of Chi.,* 317 F.3d 745, 748 (7th Cir. 2002). Plaintiff cannot do this.

Plaintiff provides no evidence whatsoever about what specific promotion she applied for, the qualifications necessary for the job, whether she was qualified, or who ultimately received the position. Lacking these fundamental requirements, Plaintiff's promotion claim fails at the threshold. *Diaz v. Kraft Foods Global, Inc.,* 653 F.3d 582, 590 (7th Cir. 2011) (plaintiff cannot survive summary judgment on her promotion claims absent a valid comparator); *Otero,* 2013 WL 530977, at *9 (same); *Ellsworth v. URS Constr. Serv.,* No. 04 C 3499, 2008 WL 4216351, at

8

*4-5 (N.D. Ill. Sept. 12, 2008) (summary judgment granted to employer where no evidence that plaintiff denied a promotion); *Scott-Riley v. Mullins Food Products,* 391 F. Supp. 2d. 707, 716 (N.D. Ill. 2005) (employee's failure to identify a specific position she applied for and was denied fatal to her failure to promote claims).

### D. Plaintiff's Miscellaneous Disparate Treatment Claims Fail

#### 1. Plaintiff Cannot Establish a *Prima Facie* Case

Plaintiff cannot establish a *prima facie* case on her claims relating to a laptop computer request, use of a temporary worker, and changed job duties. She cannot show that any of these were materially adverse employment actions, or that any similarly situated non-African-American employee was treated better, necessary elements of her *prima facie* case. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).

#### a. No Materially Adverse Employment Action

An adverse employment action is one that significantly alters the terms and conditions of an employee's job. *Griffin v. Potter,* 356 F.3d 824, 829 (7th Cir. 2004). "Typically, adverse employment actions are economic injuries such as dismissal, suspension, failure to promote, or diminution in pay." *Markel v. Bd. of Regents of the Univ. of Wis. Sys.,* 276 F.3d 906, 911 (7th Cir. 2002). A materially adverse employee action is something more disruptive than a mere inconvenience or an alteration of job responsibilities. *Dass v. Chi. Bd. of Educ.,* 675 F.3d 1060, 1069 (7th Cir. 2012); *Ellis v. CCA of Tenn. LLC,* 650 F.3d 640, 649-50 (7th Cir. 2011); *Nichols v. S. Ill. Univ.-Edwardsville,* 510 F.3d 772, 780 (7th Cir. 2008). Here, the allegedly discriminatory actions about which Plaintiff complains – denial of a laptop, assistance of a temporary worker and a change of job duties – are trivial and, in any event, did not result in tangible job consequences. Indeed, as to the change in job duties, Plaintiff admits that her job was "basically the same" as before (Facts ¶18).

9

Courts repeatedly have held that denial of requests for equipment or assistance and changing an employee's job duties do not rise to the level of adverse employment actions. *Griffin,* 356 F.3d at 829 (no adverse employment action where plaintiff given "additional work that she perceived to be outside her normal job responsibilities"); *Mercer v. Cook County,* No. 09 C 5565, 2012 WL 1044549, at *5 (N.D. Ill. Mar. 28, 2012) (change in job duties not adverse employment action); *Bowden v. Kirkland & Ellis LLP,* No. 07 C 975, 07 C 979, 2010 WL 3526483, at *12 (N.D. Ill. Sept. 3, 2010) (harder work assignments are not an adverse employment action); *Markel,* 276 F.3d at 911-12 (denial of "better equipment" not adverse employment action); *Mason v. City of Chi.,* 436 F. Supp. 2d 946, 957 (N.D. Ill. 2006) (failure to provide assistance with work not adverse employment action); *Erkan v. Ill. Dep't of Corr.,* No. 04 C 1550, 2006 WL 3087109, at *7 (N.D. Ill. Oct. 27, 2006) (denial of backup assistance not adverse employment action); *Webster v. Potter,* 230 F.R.D. 523 (N.D. Ill. 2005) (denial of assistance on postal route not adverse employment action); *Lasisi v. Motorola, Inc.,* No. 04 C 7415, 2005 WL 2240109, at *3 n.2 (N.D. Ill. Sept. 14, 2005) (denial of plaintiff's request for a laptop not adverse employment action).

Because the issues Plaintiff complains about were not materially adverse employment actions, her discrimination claims concerning them fail.

### b. No Similarly Situated Comparator

Nor does Plaintiff offer any evidence of similarly-situated non-African-Americans being treated better. Indeed, one of the comparator employees with respect to changed job duties and use of the temporary worker is also African-American (Diana Clopton), as is the temporary worker herself (Yolanda Mitchell). Specifically, some of the "additional" duties Munoz asked Plaintiff to perform were previously handled by Clopton (Facts ¶ 14) and, according to Plaintiff, Clopton was allowed to use the temporary worker (Facts ¶ 58).

10

As to the laptop request, the record is devoid of any evidence of other employees who requested laptops, apart from Senior Manager Linda Bonata's undisputed testimony that it generally took two to three months for an employee to receive a laptop once the request was approved (Facts ¶ 63). Plaintiff's laptop arrived after her October 5, 2009 termination, which was less than three months after Plaintiff made the request to Munoz (Facts ¶¶ 61-64). Thus, there is no evidence of differential treatment of Plaintiff with respect to the laptop, let alone evidence of a non-African-American treated better.

For these reasons, Plaintiff cannot establish a *prima facie* case on her miscellaneous disparate treatment claims.

### 2. Plaintiff Cannot Raise a Triable Issue of Pretext

Even if Plaintiff could show that her purportedly delayed laptop, use of the temporary worker and changed job duties were materially adverse, her claims would fail because no record evidence cast any doubt on Quaker's reasons for these actions.

Quaker has shown, as noted already, that Plaintiff's laptop arrived with the same speed (or slowness) as was typical for everyone else. And Quaker has shown that the temporary worker was engaged for a special project, namely expense reporting for the Cedar Rapids flood, and not to assist other employees. To the limited extent she did assist others if there was a particular need and she had time available, the temporary worker assisted another African-American, Diane Clopton (Facts ¶¶ 56-58). No reasonable jury could infer from these undisputed facts that Plaintiff was denied a laptop or access to the temporary worker due to race. Finally, the changes to Plaintiff's duties were simply that Munoz asked her to do Foods Co-Pack, Volume Mix and additional work on the Lynch Deck (Facts ¶ 15). These were key financial reporting outputs for the Finance Department and perfectly legitimate tasks for Munoz to ask

11

Plaintiff to perform (Facts ¶¶ 16-17). And some of these duties previously were performed by African-American Clopton, leaving no reasonable basis for an inference of race discrimination.

### E. Plaintiff's Hostile Work Environment Claim Fails

#### 1. Standard of Proof

Plaintiff also alleges that Quaker subjected her to a hostile work environment based on race. She relies upon Munoz allegedly: 1) commenting at a social gathering that Plaintiff was "kissing her boss's ass" in reference to Plaintiff's then supervisor, Marina Nechiporenko; and 2) "barking orders" and "screaming" at her[4] (Am. Compl. ¶¶ 14, 19.) Even assuming for purposes of summary judgment that this alleged conduct occurred, it does constitute a racially hostile work environment as a matter of law.

To prevail on a hostile environment claim, Plaintiff must show: 1) she was subject to unwelcome harassment; 2) the harassment was based on her race; and 3) the harassment was so severe or pervasive that it altered the conditions of her employment and created an abusive working environment. *Bowden*, 2010 WL 3526483, at *12. Whether the work environment is actionably hostile or abusive depends on the frequency and severity of the discriminatory conduct, whether statements are merely offensive or if they are physically threatening, and whether it unreasonably interferes with an employee's performance. *Id.* Here, Plaintiff cannot establish that Munoz's alleged conduct was based on her race or that it was severe or pervasive.

#### a. The Alleged Conduct Was Not Related To Plaintiff's Race

Plaintiff's hostile work environment claim fails for the fundamental reason that none of the alleged conduct had a racial character or purpose. There is nothing facially racial about Munoz's alleged comment that Plaintiff was "kissing her boss's ass" or her purported "barking

---

[4] Although the First Amended Complaint alleges that Plaintiff was subjected to "derogatory racial remarks" (Am. Compl. ¶¶ 44, 46), Plaintiff admitted in her deposition that she never heard any racial comments at Quaker (Facts ¶ 65).

12

orders" and "screaming" at Plaintiff. Nor can one reasonably infer that any of this alleged conduct was racial. Accordingly, the claim fails. *Loving v. Lew,* 512 F. App'x 616, 619 (7th Cir. 2013) (no hostile work environment when boss "bombarded" plaintiff with "work and impossible tasks" and disciplined her, because no evidence that treatment had a "racial character or purpose"); *Vance v. Ball State Univ.*, 646 F.3d 461, 470 (7th Cir. 2011) (allegations that supervisor picked on plaintiff not sufficient to survive summary judgment when not related to race); *Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 731-32 (7th Cir. 2009) (finding no evidence plaintiff was targeted because of her protected class).

Here, the alleged "harassment" on its face has nothing whatsoever to do with Plaintiff's race or national origin. Nor is there any reasonable basis in the record for inferring that Munoz was motivated by Plaintiff's race or national origin. To the contrary, most of what Plaintiff alleges was harassment was Munoz simply asking Plaintiff to do her job.

### b. The Alleged Conduct Was Not Severe or Pervasive

Even assuming that Munoz alleged conduct was racial, it simply does not rise to the level of a hostile work environment as a matter of law. No reasonable jury could find that the alleged conduct was so severe or pervasive that it altered the conditions of Plaintiff's employment and created an abusive working environment. Indeed, the "kissing the boss's ass" comment did not even occur at work, but at a party, and Plaintiff admits she had "no reservations" about inviting Munoz to a party at her home just a few weeks later (Facts ¶¶ 22-24).

Similar and, indeed, far worse conduct than that alleged against Munoz has been held not to constitute an actionable hostile working environment. *See e.g., Mercer v. Cook County, Ill.*, ___ F. App'x ___, 2013 WL 2472569, at * 4-5 (7th Cir. June 10, 2013) (sexually explicit graffiti and comments, "bumping" plaintiff, and reference to plaintiff as "bitch" not severe or pervasive enough to create hostile work environment); *Patton v. Indianapolis Public Sch. Bd.*, 276 F.3d

13

334, 339 (7th Cir. 2002) (male supervisor treating female plaintiff in rude, abrupt and arrogant manner, ignoring her work-related suggestions, failing to keep her informed of work changes and subjecting her to stern and severe criticism falls far short of creating actionable hostile working environment); *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999) (male supervisor's comments to female plaintiff such as "what the hell is going on?"; "what the hell are you doing?"; "get your head out of your ass"; "dumb motherf____"; and "when the f___ are you going to get the product"; and other incidents of rude behavior do not support sexual harassment claim); *Donald v. Portillo's Hot Dogs, Inc.*, No. 09-c-7436, 2013 WL 3834402, at *12 (N.D Ill. July 24, 2013) (profanity, decreased overtime, and modified work scheduled insufficient to rise to the level of an objectively hostile work environment); *Hildebrandt v. Ill. Dep't of Nat. Resources,* 132 F. Supp. 2d 674, 682 (C.D. Ill. 2001) (plaintiff's "list of inequities in staff support [and] micromanagement … may be annoying and unfair," but were not sufficiently severe or pervasive to create a hostile work environment).

For these reasons, Plaintiff's hostile work environment claim fails and summary judgment should be granted to Quaker on that claim.

### F. <u>Plaintiff's Retaliation Claim Fails</u>

Plaintiff's claim that she was terminated in retaliation for filing an EEOC Charge fails for the simple fact that the decision-maker, Munoz, was unaware of the Charge when she recommended Plaintiff's termination. Nor were Senior Manager Bonata or Director Thul, who approved the decision. (Facts ¶¶ 66-69). *Bowden,* 2010 WL 3526483, at *12 (granting summary judgment on retaliation claim where no non-speculative evidence that employer was aware of protective activity); *Miller v. Am. Family Mut. Ins.,* 203 F.3d 997, 1008 (7th Cir. 2000) (same).

Moreover, even if Munoz and the others had known of the Charge, Plaintiff still could not establish a *prima facie* case because she could not show, as discussed already, that she was

14

meeting Quaker's performance expectations or that a similarly-situated employee who did not engage in protected activity was treated better. *Donald*, 2013 WL 3834402, at *13-14; *Prasad v. Acxiom Corp.*, No. 10 C 5943, 2013 WL 2636050, at *5-7 (N.D. Ill. June 12, 2013).

Nor, as also discussed previously, is there any evidence that Quaker's stated reason for terminating Plaintiff was pretextual. Thus, Plaintiff's retaliation claim fails.

### III.  CONCLUSION

Based upon the undisputed facts, no reasonable jury could find in Plaintiff's favor on any of her claims. Summary judgment should be granted in Quaker's favor and the case dismissed.

Respectfully submitted,

QUAKER SALES & DISTRIBUTION, INC.

By:     s/ Emily C. Fess
        One of Its Attorneys

Thomas M. Wilde
Emily C. Fess
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, Illinois  60601-1003
T:  +1 (312) 609-7500

Dated:  August 16, 2013

CHICAGO/#2480539.4

## CERTIFICATE OF SERVICE

The hereby certify that I electronically filed the foregoing DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the following:

>Raymond Barbosa
>George Oparanozie
>Sidney Margolis
>Barbosa Law Group, P.C.
>100 West Monroe Street, Suite 711
>Chicago, Illinois  60603

on August 16, 2013.

/s Emily C. Fess

CHICAGO/#2480539.4