UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| YETUNDE AKINYEMI,<br><br>Plaintiff,<br><br>v.<br><br>PEPSICO, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 12 C 5876 |

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion for summary judgment of Defendant Quaker Sales & Distribution, Inc. ("Quaker") pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the motion is granted.[1]

BACKGROUND

I. Facts

The following facts are derived from the parties' respective statements and exhibits filed pursuant to Northern District of Illinois Local Rule 56.1. The Court reviews each Local Rule 56.1 statement and disregards any argument, conclusion, or assertion unsupported by the evidence in the record. Plaintiff Yetunde Akinyemi

[1] The Court evaluates the instant motion according to the five counts in Akinyemi's first amended complaint. However, as this Court has previously ruled, Akinyemi improperly named Pepsico as a defendant in that complaint instead of Quaker. Akinyemi filed a second amended complaint which properly named Quaker, but the Court struck that complaint on unrelated grounds.

("Akinyemi") is a black female of Nigerian descent. On September 8, 2005, Akinyemi commenced her employment with Quaker, a division of Pepsico, Inc. ("Pepsico") as a full-time accountant. Akinyemi worked in Quaker's Corporate Finance Department until January 28, 2007, when she received a promotion to the position of Financial Analyst II in Quaker's Supply Chain Finance Group. In late 2007, Akinyemi was again promoted; while she remained in the position of Financial Analyst II, her level was raised from Level 6 to Level 7, thus resulting in a salary increase.

Akinyemi's responsibilities included financial reporting for Quaker's nationwide warehouse managers and inputting data to explain reported financial figures. In early 2008, Akinyemi accepted a lateral move to the position of Financial Analyst II in Quaker's Snacks Division. Her supervisors were Valerie Cooper ("Cooper") (African-American) and Marina Nechiporenko ("Nechiporenko") (Caucasian), both of whom prepared Performance Development Reviews ("PDRs") which evaluated Akinyemi's performance. Akinyemi respected both Cooper and Nechiporenko and considered them to be fair supervisors. Most comments on the PDRs were positive, but one PDR pointed out that Akinyemi could improve upon her analytical and proofreading skills.

In March 2009, Nechiporenko left Quaker's Chicago office for a position in a Pepsico office in New York. Imelda Munoz ("Munoz") became Akinyemi's new supervisor on April 6, 2009. Senior Manager Linda Bonata ("Bonata") supervised

Munoz, and Director Cindy Thul ("Thul") supervised Bonata. On March 13, 2009, a few weeks prior to becoming Akinyemi's supervisor, Munoz had commented at a company function that Akinyemi had been "kissing [Nechiporenko's] ass." Munoz also had known Akinyemi from her time as Akinyemi's mentor at Quaker in 2006.

Munoz and Akinyemi were not a cohesive working duo. Munoz frequently summoned Akinyemi to her office for work-related meetings. Munoz often expressed displeasure with Akinyemi's work product. Akinyemi failed to attend three meetings at which Munoz had expected her attendance. Akinyemi also failed to complete assignments on time according to the deadlines set by Munoz. Finally, Akinyemi incorrectly inputted data in that she mixed up positive and negative signs when reporting figures.

Munoz met with Bonata and Human Resources employee Valerie Henderson ("Henderson"), an African-American employee of Quaker. Munoz is Hispanic, and Thul and Bonata are Caucasian. It was determined that Akinyemi would be placed on a Performance Improvement Plan ("PIP"), and Akinyemi was informed that she would be terminated if her performance did not ameliorate. The PIP began on August 3 and concluded on October 5 when Akinyemi was terminated.

Meanwhile, friction between Akinyemi and Munoz persisted. On July 22, 2009 Akinyemi requested a laptop computer. Bonata testified that laptops usually arrive approximately two to three months after they are ordered. Munoz, however, did not

approve the request until September 1, 2009, and the laptop did not arrive until after Akinyemi's termination.

Aside from the ongoing strife between Akinyemi and Munoz, another pattern recurred—Akinyemi's performance errors. For instance, on one report, she erroneously inputted an overage of $290,000, but there was a shortage in that amount. In other words, Akinyemi once again mistook a positive sign for a negative one. She also continued not to submit work by the deadlines that Munoz had prescribed. Akinyemi did not receive Munoz's e-mails with assignments promptly because she did not check her e-mail regularly. She explained to Munoz that she found it "distracting" to do so and suggested that Munoz should communicate deadlines to her orally.

Akinyemi was not keen on having been placed on the PIP. She refused to sign her PDR, and she lodged charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 11, 2009. Things finally came to a head that October. Munoz met with Bonata, Henderson and Thul, and they all agreed that Akinyemi should be terminated. The termination occurred on October 5, 2009. Akinyemi was replaced by Matthew McKenna ("McKenna"), a Caucasian male.

## II. Procedural History

On April 24, 2012, the EEOC issued to Akinyemi a Notice of Right to Sue letter following an investigation of her charges of racial discrimination and retaliation. On September 5, 2012, Akinyemi filed a five count first amended complaint alleging

racial discrimination with respect to: (i) her not being promoted; (ii) her termination; and (iii) the disparate manner in which she had been treated at Quaker, all in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Akinyemi also alleged a hostile work environment in violation of Section 1981 and Title VII, and she finally alleged that her termination constituted retaliation for her having complained of discrimination in violation of Section 1981. On August 16, 2013, Quaker moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on all of Akinyemi's claims.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on which the non-movant bears the burden of proof at trial. *Id.* at 325. The non-movant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; she must go beyond the pleadings and support her contentions with documentary evidence. *Id.* A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-movant. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the court construes all facts and draws all reasonable inferences in favor of the non-movant. *Smith v. Hope Schs.*, 560 F.3d 694, 699 (7th Cir. 2010).

DISCUSSION

I. Quaker's Objections to Akinyemi's Local Rule 56.1 Statement of Additional Facts and Response to Quaker's Local Rule 56.1 Statement

Before the Court addresses the merits of the instant motion, some preliminary matters require attention. Quaker contends that both Akinyemi's Local Rule 56.1 statement of additional facts and her response to Quaker's Local Rule 56.1 statement of facts are improper. The Court agrees. In her response, Akinyemi "disputes" some of Quaker's material facts. However, the Court fails to see where the "disputes" are because Akinyemi repeatedly responds to Quaker's facts by merely noting additional facts or "clarify[ing]" Quaker's facts. Akinyemi is not, therefore, disputing these facts, and her responses as described are improper under Local Rule 56.1. Akinyemi also does add additional facts and legal conclusions in her response to Quaker's Local Rule 56.1 statement. She further violates Local Rule 56.1 with respect to her statement of additional facts in that, in lieu of presenting short, numbered statements not to exceed forty, Akinyemi has submitted seventeen exceptionally lengthy statements which add up to forty-four paragraphs when sub-parts are included in the calculation.

II. Akinyemi's Title VII and Section 1981 Claims

Title VII prohibits employers from discriminating based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "Section 1981 focuses on the right to be free of racial discrimination in the making and enforcing of contracts." *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013). The methods of proof and elements of a Title VII claim and a Section 1981 claim are "essentially identical[.]" *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009). This Court will thus analyze Akinyemi's Title VII and Section 1981 claims interchangeably. *Accord Morgan*, 724 F.3d at 995.

In order to succeed in a Title VII lawsuit, a plaintiff must show that: (i) she is a member of a protected class; (ii) she has been the subject of some adverse employment action or a hostile work environment; and (iii) the employer acted in this manner because of the plaintiff's being a member of the protected class. *Id* at 995. A plaintiff may prove her claim either by the direct or indirect method of proof. *Casna v. City of Loves* Park, 574 F.3d 420, 426 (7th Cir. 2009).

In the instant case, Akinyemi has indicated that she wishes to pursue only her retaliation claim under both methods and the remainder of her claims solely under the indirect method. The Court thus shall reserve its discussion of the direct method until the analysis of the retaliation claim in Part III, infra. To show discrimination under the indirect method, a plaintiff must allege that: (i) she is a member of a protected class; (ii) she met her employer's legitimate job expectations; (iii) she suffered an

adverse employment action; and (iv) similarly situated employees outside of the protected class were treated more favorably. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). If the plaintiff meets this initial burden, the defendant employer then must provide a non-discriminatory reason for the adverse employment action. *Id.* at 884. If the employer meets this burden, the plaintiff then must present evidence that, if believed by the trier of fact, would show that the true reason for the adverse action is discrimination. *Id.*

A. Racial Discrimination Claims

Akinyemi contends that she was the victim of racial discrimination by Quaker in the form of: (i) the failure to promote her; (ii) her wrongful termination; and (iii) Quaker's disparate treatment of her during her employment by denying her a laptop computer, altering her job responsibilities, and not providing her with the assistance of a temporary worker whom Quaker had hired and who was stationed at Quaker's Chicago office, all in violation of Title VII and Section 1981.

1. Failure to Promote Claim

Quaker contends that the record is devoid of evidence to support Akinyemi's claim that she was discriminated against with respect to her being promoted during her employment. The Court has carefully reviewed Akinyemi's response memorandum and cannot discern any response to this claim. The Court thus views the claim as an unopposed motion for summary judgment. A non-movant's failure to respond to a motion for summary judgment does not automatically result in a

judgment in favor of the movant. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The ultimate burden of persuasion still remains with the movant to demonstrate that it is entitled to judgment as a matter of law. *Id.* at 608.

To prevail on a claim of promotional discrimination, a plaintiff must show that: (i) she belongs to a protected class; (ii) she applied for a position for which she was qualified; (iii) she was rejected for it; and (iv) the defendant granted the promotion to an individual outside of the plaintiff's protected class who was not better qualified than the plaintiff. *Grayson v. City of Chi.*, 317 F.3d 745, 748 (7th Cir. 2002). In the case sub judice, the Court has been unable to locate any evidence in the record of what promotion Akinyemi applied for and the requisite criterion or criteria to garner the promotion. The record also does not indicate who received whatever promotion Akinyemi sought, so the Court is unable to evaluate whether the recipient had inferior qualifications to those of Akinyemi. The record also is lacking with respect to the issue of whether the recipient of the promotion was or was not a member of the protected class. In short, Akinyemi has not satisfied any of the prima facie elements necessary to establish promotional discrimination, and this claim is dismissed.

2. Wrongful Termination Claim

Akinyemi alleges that she was terminated due to her race (black African). She concedes that she never heard any racially offensive comments directed towards her by any Quaker employees. She avers that Munoz perhaps did not feel comfortable working with someone of African descent, but only Akinyemi's conjecture supports

this contention. Hence, as Akinyemi concedes in her response memorandum, she can only prove discrimination via the indirect method.

Akinyemi cannot sustain her initial burden under the indirect method for two reasons. First, the record evinces that she was not meeting her employer's legitimate expectations. The Court underscores that Akinyemi has admitted to all of the errors that the Court will now catalogue. She repeatedly attempts to "clarify" and "note" reasons for the errors, but these clarifications and notations do not erase her admissions to material facts in Quaker's Local Rule 56.1 statement regarding her mistakes.

Akinyemi had erred in her work prior to Munoz's having become her supervisor. Both Cooper and Nechiporenko had commented in Akinyemi's PDRs that proofreading work and critical analysis were areas upon which Akinyemi could improve. Before being placed on the PIP, Akinyemi failed to attend several meetings. Akinyemi argues that having attended would have been redundant, but she admits that Munoz expected her to attend the meetings. Akinyemi also incorrectly inputted figures into financial reports, and these errors caused delays in the completion of the reports.

These deficiencies continued after the commencement of the PIP. One striking example occurred when Akinyemi conducted an analysis and reported an overage of $290,000. In fact, there was a shortage of $290,000. The error was discovered and rectified, but this example illustrates that the pattern of incorrect work continued. It is

reasonable for an employer to expect that an employee will correctly enter figures onto financial analysis reports. Akinyemi repeatedly notes in her response to Quaker's statement of facts that she was without a laptop while she was on the PIP. Financial analysts functioned competently long before the advent of laptops, however, and Akinyemi also had a desk computer. The Court fails to comprehend the nexus between Akinyemi's not having had a laptop and her repeated data entry errors, which also had occurred prior to her having been placed on the PIP and before she requested a laptop on July 22.

Akinyemi also told Munoz not to e-mail her about upcoming meetings, claiming that checking e-mail was "distracting" for her. Rather, Akinyemi wished for Munoz to inform her of meetings orally. In the modern working world, it is certainly reasonable for an employer to expect to be able to communicate requests to employees via e-mail. Akinyemi's tardiness in submitting assignments also continued after she had been placed on the PIP. Akinyemi claims that Munoz's deadlines were unreasonable, but she does not indicate what would have constituted reasonable deadlines. Also, a substantial portion of the difficulty clearly involved Akinyemi's not regularly checking her e-mail, so she did not know of the assignments promptly. Akinyemi argues that she did not receive proper training; however, an employee should not require training with respect to the task of checking her e-mail on a regular basis, discerning the difference between positive and negative signs on financial reports, or attending meetings that her supervisor expects her to attend.

Akinyemi also has not shown how similarly situated employees (comparators) have been treated differently. The lone comparator cited by Akinyemi is McKenna. Akinyemi notes that Munoz has not made a log of McKenna's performance errors; however, the record lacks evidence of performance errors by McKenna.

Akinyemi argues that she need only show that she was replaced by someone outside of the protected class to satisfy the fourth element of the indirect method. The authority that she cites for this proposition, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 495 (7th Cir. 2000), is inapposite. *Bellaver* is not applicable in cases where employees are terminated based on performance; rather, it applies where an employer terminates a single employee on the ground that the termination is a layoff. *See Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 693 (7th Cir. 2002).

Akinyemi has not shown how similarly situated employees outside the protected class performed in the manner in which Akinyemi did but were treated more favorably. Akinyemi performed deficiently, was placed on a PIP and warned that she would be terminated if she did not improve, she did not improve, and she was terminated. The Court can discern no evidence of racial discrimination in this sequence of events, and Akinyemi's discrimination claim with respect to termination is dismissed.

3. Disparate Treatment Claims Relating to Akinyemi's Working Conditions

Akinyemi claims that she was discriminated against because: (i) she was not provided with a laptop; (ii) she was assigned different and more work; and (iii) she

was not granted the services of a temporary worker who had been assigned to Quaker's Chicago office. Like her claim with respect to racial discrimination in her termination, Akinyemi fails to provide any comparator who was treated differently. For instance, she has not shown how an employee not in the protected class received a laptop or was allowed to use a temporary worker. She also has not demonstrated that her supposed receipt of more work and differing responsibilities related to her race. There is no evidence that, say, McKenna has been given a lighter work load by Munoz, and Akinyemi cites to no other comparator.

Furthermore, there exists a contradiction between Akinyemi's deposition testimony and her declaration with respect to changed work responsibilities. In her deposition, Akinyemi testified that her work responsibilities were basically the same under Munoz as under prior supervisors. However, Akinyemi's declaration indicates that her responsibilities shifted under Munoz. The Court adopts the position taken by Akinyemi in her sworn deposition testimony rather than her contradictory declaration. *See Broaddus v. Shields*, 665 F.3d 846, 855-56 (7th Cir. 2012). These claims therefore fail.

B. Hostile Work Environment Claims

Akinyemi alleges that she was the victim of a hostile work environment in violation of Title VII and Section 1981. To prove that a work environment was hostile, a plaintiff must show that: (i) she was the victim of unwelcome harassment; (ii) the harassment was perpetrated due to the plaintiff's race; and (iii) it was "severe

enough to create an objectively hostile or abusive work environment." *Ford v. Minteq Shapes and Servs., Inc.*, 587 F.3d 845, 847 (7th Cir. 2009) (citation omitted).

Akinyemi cites Munoz's comment that she (Akinyemi) was "kissing [Nechiporenko's] ass" made at a company function as evidence of hostility. The Court emphasizes that, according to Munoz's deposition testimony, she made no mention of the comment, whereas her declaration claims that she mentioned it to Henderson. The Court adopts the position of Akinyemi's sworn deposition testimony. *See Broaddus*, 665 F.3d at 856-57. Akinyemi's not having mentioned Munoz's comment militates against the position that it amounted to harassment so severe as to constitute a hostile working environment.

Akinyemi also alleges that Munoz screamed and barked orders at her. None of this conduct indicates any racial animus on the part of Munoz. Akinyemi provides no evidence as to how Munoz treated employees outside the protected class. Even if the Court were to consider this behavior by Munoz to constitute harassment, the racial component is lacking, and Akinyemi thus cannot satisfy her burden to sustain these claims.

C. Retaliation Claim

Akinyemi claims that she was terminated in retaliation for her having brought charges of discrimination with the EEOC in violation of Section 1981. The purpose of the prohibition against retaliatory termination is to protect victims of discrimination who complain about illegal conduct to the EEOC, the courts, or the employer itself.

*See generally Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2006). A plaintiff may prove retaliation by either the direct or indirect method of proof. *Id.* at 786. A plaintiff establishes a prima facie retaliation claim under the direct method by showing that she: (i) engaged in a statutorily protected activity; (ii) suffered a materially adverse employment action; and (iii) can demonstrate a causal link between the two. *Id.* The indirect method calls for the plaintiff to establish the first two prongs of the direct method, plus a showing that she performed her job satisfactorily but was treated less favorably than similarly situated employees who did not complain of discrimination. *Id.* at 786-87. If the plaintiff satisfies her initial burden under the indirect method, the defendant must articulate a legitimate, non-discriminatory reason for its actions. *Id.* at 787. If the defendant does so, the burden shifts back to the plaintiff, who must show that the defendant's stated reason is a pretext to a discriminatory motive. *Id.*

Akinyemi avers that Michael DeAngelo ("DeAngelo"), a vice president with Quaker, knew of her discrimination charges to the EEOC. However, Akinyemi admits in her response to Quaker's Local Rule 56.1 statement that Munoz, Bonata and Thul—the decisionmakers with respect to terminating Akinyemi—were unaware of the charges. The Court thus does not see a causal connection between Akinyemi's charges and her termination, as no evidence exists that DeAngelo played a role in her termination. As the decisionmakers who recommended that Akinyemi be terminated

were unaware of her charges, summary judgment is proper under the direct method. *See id.* at 788.

Akinyemi also cannot substantiate her retaliation claim under the direct method. First, as the Court has already determined, she had not been performing her job satisfactorily when she was terminated. Secondly, she again cites only to McKenna as a comparator. However, the record is devoid of any evidence as to how McKenna compares as an employee to Akinyemi. His merely not having complained of discrimination does not provide the Court with sufficient information so as to be able to compare him with Akinyemi, and this alternative rationale supports the Court's decision to dismiss Akinyemi's retaliation claim.

CONCLUSION

Akinyemi has not satisfied any of the prima facie elements of her promotional discrimination claim, which she does not address in her response memorandum. No evidence exists that race contributed to Akinyemi's termination; rather, the evidence indicates that she was terminated due to substandard work product. Akinyemi has not demonstrated how her work environment (even if unpleasant) constituted a hostile one, as the record lacks evidence of a connection between Munoz's demeanor and Akinyemi's race. The same is true with respect to Akinyemi's claims regarding her working conditions (no laptop, more work, some changed responsibilities and the denial of the use of a temporary worker stationed at the facility). Finally, Akinyemi's retaliation claims fail under both the direct and indirect methods of proof. The

decisionmakers who terminated Akinyemi were unaware of her charges of discrimination, and Akinyemi had not been performing her job satisfactorily. Akinyemi also has, as with her other claims of discrimination, failed to point to an adequate comparator. As such, Quaker's motion for summary judgment is granted.

Charles P. Kocoras

Charles P. Kocoras
United States District Judge

Dated: October 16, 2013